IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SAFARI AVIATION, INC. dba | ) | Civ. No. 07-00078 ACK-KSC |
| SAFARI PACIFIC AIRWAYS, | ) | |
| AND SAF, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### BACKGROUND

In 2004, Plaintiffs Safari Aviation Inc., d/b/a Safari Pacific Airways and SAF, Ltd. (collectively, "Safari") engaged in a business venture to provide air cargo and passenger services to American Samoa, a United States unincorporated territory. Consequently, Safari entered into a contract with Village Air, Inc. ("Village") to provide the requisite aircraft operations ("Contract").

To provide transportation services as an air carrier, Village needed to obtain authorizations from two separate entities – the Department of Transportation ("DOT") and the Federal Aviation Administration ("FAA").  The FAA provides air

1

carriers with safety authority in the form of Air Carrier
Certificates, and Operations Specifications. 14 C.F.R. Pts. 119 &
135.  The DOT provides economic authority in the form of
Certificates for Public Convenience and Necessity.  49 U.S.C. §§
41101 to 41113.

On February 12, 2004, the FAA issued to Village an
amendment to its safety authority to conduct operations in
American Samoa and other islands, without obtaining an amendment
to its economic authority from the DOT.  However, Village ceased
operations upon determining that it did not have economic
authority to provide air cargo and transportation services to
American Samoa.

On February 15, 2007, Safari filed a complaint
("Complaint") against the United States pursuant to the Federal

---

[1] On May 1, 1995, the Secretary of Transportation restricted
Village's economic authority to Alaska only.  See In re Village
Aviation, Inc., Docket 42860, Order of the Dep't of Transp. 95-5-
1, 1995 WL 251928 (May 1, 1995).  Village was required to comply
with the restrictions promulgated in the DOT's order, or petition
the DOT to amend its Certificate for Public Convenience and
Necessity to obtain economic authority to fly to American Samoa.
Id.

Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2674, 2680(h).
While Safari makes five claims in the Complaint, these claims can
be consolidated into three basic arguments: (1) the FAA
negligently licensed Village by granting it safety authority
without first determining that Village had economic authority
from the DOT (Complaint ¶¶ 13, 15); (2) the FAA negligently
approved Don King ("King") as Village's manager (Complaint ¶ 16);
and (3) the DOT negligently failed to communicate to Village that
the DOT restricted its economic authority to Alaska only
(Complaint ¶ 14).

　　　Defendant filed a Motion to Dismiss ("Motion") on
January 24, 2008.  Safari filed its Memorandum of Law in
Opposition to the Motion to Dismiss ("Opposition") on March 7,
2008.  Defendant filed its Reply to Plaintiffs' Opposition to the
United States' Motion to Dismiss on March 14, 2008.

　　　On March 25, 2008, the Court heard oral arguments and
ordered a supplemental briefing schedule.  On March 31, 2008,
Defendant filed its Supplemental Motion to Dismiss.  Safari filed
its Supplemental Memorandum of Law in Opposition to the Motion to
Dismiss ("Supplemental Opposition") on April 8, 2008.[2]

**STANDARD OF REVIEW**

　　　A court's subject matter jurisdiction may be challenged

---

[2]  All of the above findings were made solely by viewing the
facts alleged most favorably to Safari for the limited purpose of
considering the Motion.

under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").
"A party invoking the federal court's jurisdiction has the burden
of proving the actual existence of subject matter jurisdiction."
See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of
subject matter jurisdiction, the court is not "restricted to the
face of the pleadings, but may review any evidence, such as
affidavits and testimony, to resolve factual disputes concerning
the existence of jurisdiction." McCarthy v. United States, 850
F.2d 558, 560 (9th Cir. 1988).

When ruling on a jurisdictional motion involving
factual issues which also go to the merits, the moving party
"should prevail only if the material jurisdictional facts are not
in dispute and the moving party is entitled to prevail as a
matter of law." Casumpang v. Int'l Longshoremen's &
Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

## DISCUSSION

"The basic rule of federal sovereign immunity is that
the United States cannot be sued at all without the consent of
Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). The
FTCA provides that the United States is liable for its torts in
the same manner and to the extent a private person would be
liable under like circumstances in the place where the act or
omission occurred. See 28 U.S.C. § 2674; see also United States

4

v. Olson, 546 U.S. 43 (2005) (holding that the federal government waives sovereign immunity only where local law would make a private person liable in tort).  The United States maintains its sovereign immunity in "[any] claim arising out of ... misrepresentation ... or interference with contract rights"  28 U.S.C. § 2680(h); See also United States v. Neustadt, 366 U.S. 696 (1961); Block v. Neal, 460 U.S. 289 (1983).

The Court must first determine whether Safari has properly established that a private individual under like circumstances would be liable under Alaska law.  Second, the Court must determine whether Safari's claims against Defendant fall within one of the FTCA exceptions.

## I.   Safari has Failed to Establish that A Private Individual Under Like Circumstances Would Be Liable Under Alaska Law

Barring an applicable exception, the government is liable for claims brought under the FTCA to the same extent that a private individual would be liable under similar circumstances under Alaska law.  See 28 U.S.C. § 2674.  A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity.  Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992); Hollamn v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

"The FTCA was not intended to redress breaches of federal statutory duties."  Johnson v. Sawyer, 47 F.3d 716, 727-28 (5th Cir. 1995) (en banc) (quoting Sellfors v. United States,

697 F.2d 1362, 1365 (11th Cir. 1983)).  As the Second Circuit has held, "the FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution, or of federal statutes or regulations standing alone.  The alleged federal violations also must constitute violations of duties analogous to those imposed under local law."  Chen v. United States, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotations and citations omitted).

Defendant first contends that the Court lacks jurisdiction because Safari failed to allege that a private person under like circumstance would be liable for the claims alleged in the Complaint.  In its Opposition, Safari mentions four laws, which it argues are sufficiently analogous to the case at bar to hold Defendant liable for negligent licensing as a private individual under Alaskan law.  Each of these laws will be addressed in turn.  The Court will then determine whether Safari has sufficiently alleged an analogous Alaskan state law for its negligent approval claim.  Safari's third and final claim of negligent communication will be discussed infra in the misrepresentation section.

A.   Negligent Licensing Claim

1.   Good Samaritan Doctrine

First, Safari contends that "Alaska law imposes a duty under the Good Samaritan doctrine recognized and enunciated by

6

[the] Restatement (Second) of Torts § 323."[3]  <u>See</u> Opposition at 11.

Alaska common law recognizes that an actor, by his affirmative acts, can assume or create a duty where none otherwise exists.  <u>Saddler v. Alaska Marine Lines, Inc.</u>, 856 P.2d 784, 788 (Alaska 1993).  Specifically, the Restatement (Second) of Torts § 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for <u>physical harm</u> resulting from his failure to exercise reasonable care to perform his undertaking if
>> (a) his failure to exercise such reasonable care increases the risk of such harm, or
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

<u>See</u> <u>Saddler</u>, 856 P.2d at 788 (quoting § 324A) (emphasis added).

In an attempt to fit its claims within the confines of the Good Samaritan doctrine, Safari argues that even though the FAA had no duty to Safari, by undertaking to monitor and license

_____

[3] Safari's reliance on the Restatement (Second) of Torts § 323 is misplaced.  § 323 could only apply if Defendant's liability to Village were at issue. <u>See</u> <u>Mulvihill v. Union Oil Co. of California</u>, 859 P.2d 1310, 1313 (Alaska 1993).  § 324A parallels the rule stated in § 323, however § 324A governs liability to third persons.  Thus, since there was no relationship between the Defendant and Safari and only a relationship between Defendant and Village, the Court will explore the applicability of § 324A to the case at hand.

Village, the FAA increased the risk that Village would harm
Safari.  Safari argues that it suffered economic harm as a result
of the FAA's negligence.  Safari suggests that its claims are
analogous to those in <u>Williams v. Municipality of Anchorage</u>, 633
P.2d 248 (Alaska 1981).  In <u>Williams</u>, a government employee
supplied a plaintiff with a defective ladder for docking his
boat, which resulted in serious physical injury to the plaintiff.
Here no physical injury resulted from the Defendant's actions.
<u>Id.</u> at 249-50.  However, the Good Samaritan doctrine is only
applicable in situations where the undertaking results in
physical harm to person or property.  <u>See</u> <u>Saddler</u>, 856 P.2d at
788.  The Court has not found a single case in Alaska where the
Good Samaritan doctrine was applied to an economic injury.
Therefore, the Good Samaritan doctrine is not applicable to
Safari's claim of negligent licensing.

> **2.  Negligence Per Se Theory**

Next, Safari argues that a negligence <u>per</u> <u>se</u> theory of
liability is sufficiently analogous to apply to its negligent
licensing claim.  Instead of citing cases that articulate
Alaska's theory of negligence <u>per</u> <u>se</u> and analogizing those cases
to the case at bar, Safari attempts to distinguish a single Fifth
Circuit case that held that courts have "generally refused to
find the necessary state law duty in an assertedly violated
federal statute or regulation merely because the law of the

relevant state included a general doctrine of negligence <u>per</u> <u>se</u>."

<u>See</u> <u>Johnson</u>, 47 F.3d at 728-29.  The Fifth Circuit continued:

> Where a claim is wholly grounded on a duty
> imposed by an allegedly violated federal
> statute or regulation, to allow FTCA recovery
> merely on the basis of a general state doctrine
> of negligence *per se*, without requiring that
> there be some specific basis for concluding
> that similar conduct by private persons or
> entities would be actionable under state law is
> to in essence discriminate against the United
> States ...

<u>Id.</u> at 729.  Safari argues that <u>Johnson</u> is distinguishable
because in Alaska, unlike in Texas, there is an "express
statutory private cause of action for the statutory violation."
<u>Id.</u>  However, Safari fails to cite any statutory private cause of
action under Alaskan law.  As such, this argument must fail as
well.

### 3.   Negligent Licensing By State Agency

Next, Safari contends that there is an analogous
negligent licensing cause of action in Alaska.  <u>See</u> Opposition at
12.  The Supreme Court of Alaska has held that the State owes a
duty of care to patrons of day care facilities where the State
undertook the responsibility to license those facilities.  <u>See</u>
<u>R.E. v. State of Alaska</u>, 878 P.2d 1341, 1345-46 (Alaska 1994).
Specifically, the court held that where the Department of Family
and Youth Services "undertook to protect children from sexual
abuse in licensed day care facilities and that this undertaking

gave rise to a common law duty for [the Department of Family Youth Services] to use due care in performing its licensing and investigatory functions." Id. at 1345.  The Alaska Supreme Court continued,

> [The State] investigated [the day care provider], and issued it a licence. Presumably, the effect of state licensing was to instill a greater sense of security in the parents who utilized the licensed day care facilities.  Having undertaken the responsibility of licensing, the State was under a duty to exercise reasonable care in carrying out that function.

Id. at 1348.  Safari argues that because the State of Alaska has been found liable in a negligent licensing case, the Court can imply that a private individual would be liable as well.  See Supplemental Opposition at 5.

Safari's argument is incorrect.  The FTCA "requires a court to look to the state law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA in the performance of activities which private persons do not perform."  See Olson, 546 U.S. at 46 (emphasis added) (internal citations omitted).  Thus, Safari cannot base its claim solely upon the fact that the State of Alaska imposes liability upon itself under like circumstances; it must show that the State of Alaska would impose liability on a private individual under like circumstances.

In R.E., the Alaska Supreme Court determined that the

10

State might be liable for negligent licensing, but it has never held that a private entity might be liable under similar circumstances.  See R.E., 878 P.2d at 1345.  Thus, an Alaskan law waiving state immunity in the state licensing context is inapplicable to this case because it does not show that a private individual would be liable under similar circumstances.

   **4.   Public Policy**

Finally, Safari argues that absent a law creating an actionable duty, the standard for determining whether an actionable duty arises under common law is a question of public policy involving the following considerations: (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant; and (7) the consequences to the community of imposing a duty to exercise care with resulting liability for breach.  See D.S.W. v. Fairbanks North Star Borough Sch. Dist., 628 P.2d 554, 555-56 (Alaska 1981) (holding that a school owed no actionable duty to properly classify, place and teach a student).

Here, Safari does not venture to apply the above-cited policy factors to the FAA's actions.  The Court finds that an

actionable duty has never been extended to actions taken by private persons in the negligent licensing context in Alaska. Thus, this argument must fail as well.

### B.   Negligent Approval Claim

Safari claims that the FAA was negligent in approving King as the manager of Village because King was not aware of the Alaska-only restriction to Village's economic authority. Supplemental Opposition at 2.  To determine whether a private person would be liable for the negligent approval of a manager under Alaska law, the Court must first examine the contours of the rules governing the FAA's actions.

The FAA has certain requirements for the Director of Operations, the Chief Pilot, and the Director of Maintenance.  14 C.F.R. § 119.71.  The Federal Aviation Regulations ("Regulations") require the air carrier to staff the above-referenced positions with qualified persons "to ensure the safety of its operations."  See 14 C.F.R. § 119.69.  The individuals who serve in those positions must be qualified through training, experience and expertise.  Id.  They must have a full understanding of the aviation safety standards and practice, the Regulations and the certificate holder's operations specifications.  Id.  The Regulations also require those employees to "discharge their duties to meet applicable legal requirements and to maintain safe operations."  Id.

12

Safari suggests that these requirements impose some duty on the FAA to determine whether a manager is aware of its air carrier's economic authority before the manager can be approved.  However, Safari cites no authority for this proposition.

Even still, assuming that the FAA was responsible for determining whether King had knowledge of Village's economic authority before approving him as the manager of Village, Safari does not cite, and the Court has not found, any analogous Alaskan laws that would impose liability on a private individual in similar circumstances.

In light of the above analysis, the Court finds Safari has failed to establish that a private individual would be liable for either Safari's negligent licensing or negligent approval claims under Alaska law.  In its Opposition, Safari acknowledges that it must seek leave to amend the Complaint to show how Defendant is liable for claims brought under the FTCA to the extent that a private individual would be under similar circumstances under the laws of Alaska.  See Opposition at 14. However, as Safari also recognizes, the Court must first determine whether any exceptions to the FTCA apply in this case, and if so, the Court must dismiss Safari's claims for a lack of subject matter jurisdiction.

**II.  Even Assuming Safari Established A Claim Under Alaska Law, Defendant is Still Entitled to Sovereign Immunity Under the**

**Misrepresentation and Interference with Contract Rights Exception to the FTCA**

As noted above, the government's sovereign immunity to tort claims is waived where a private person would be liable under like circumstances.  See 28 U.S.C. § 2674.  However, Defendant has maintained its sovereign immunity in "[any] claim arising out of . . . misrepresentation . . . or interference with contract rights."  See 28 U.S.C. § 2680(h).  The burden is on Defendant to prove the applicability of the FTCA exceptions. Prescott, 973 F.2d at 701.

Before the Court analyzes the substance of the FTCA exceptions, it will address Safari's argument that the misrepresentation and the interference with contract right exceptions to the FTCA are generally inapplicable.  Specifically, Safari attempts to analogize its case to a group of cases ("Polio Cases") that held that the discretionary function exception did not bar governmental liability for the negligent licensing and approval of polio vaccines.[4]  Safari suggests that the misrepresentation and interference with contract right exceptions should not apply in this case because they did not apply in the Polio Cases.  See Opposition at 8.  After reviewing the Polio Cases, the Court finds that Safari's argument is without merit.

---

[4] See, e.g., Berkovitz v. United States, 486 U.S. 531 (1988); Baker v. United States, 817 F.2d 560 (9th Cir. 1987); Loge v. United States 662 F.2d 1268 (8th Cir. 1981); Schindler v. United States, 661 F.2d 552 (6th Cir. 1981).

The Polio Cases focused on whether a government agency, when regulating the conduct of private individuals, may be subject to tort liability for the alleged negligence of an agency employee in failing to follow a specific mandatory regulation.  <u>See</u> <u>Berkovitz</u>, 486 U.S. at 534-35; <u>Baker</u>, 817 F.2d at 566; <u>Loge</u>, 662 F.2d at 1272-73.  Here, the two main issues are whether the government's licensing of Village was a misrepresentation that Village had requisite economic authority to fly to the American Samoa and whether the government's licensing interfered with the Contract.  The Court cannot presume that the misrepresentation and interference with contract rights exceptions to sovereign immunity do not apply simply because they were not raised on appeal in other negligent licensing cases decided on different grounds.

Therefore, the Court now turns to whether the misrepresentation or interference with contract right exceptions apply to this case.

A.   **Misrepresentation Exception**

Courts have broadly construed the misrepresentation exception to the FTCA waiver of immunity.  <u>Frigard v. United States</u>, 862 F.2d 201, 202 (9th Cir. 1988).  It encompasses negligent as well as willful misrepresentation.  <u>Neustadt</u>, 366 U.S. at 702.  Moreover, courts "must look beyond the characterizations in the pleadings to distinguish

15

misrepresentation from negligence claims, a task which is frequently far from simple." See Rich Prods. Corp. v. United States, 804 F.Supp. 1270, 1272 (E.D. Cal. 1992) (holding that the negligent inspection of frozen fruit fell within the FTCA's misrepresentation exception); see also Mt. Homes, Inc. v. United States, 912 F.2d 352, 356 (9th Cir. 1990) (holding that the misrepresentation exception applied to the government's failure to specify the correct amount of sales tax in a cost estimate for a building project).

The Supreme Court has provided guidance in two seminal cases in analyzing the applicability of the misrepresentation exception.  In Neustadt, the Supreme Court considered whether the government was liable under the FTCA to a plaintiff who relied on an inaccurate statement from the Federal Housing Administration ("FHA").  The FHA had inspected a home to determine if it was eligible for mortgage insurance.  The plaintiff relied on the FHA's inaccurate appraisal in paying a purchase price in excess of the fair market value.  Neustadt, 366 U.S. at 697.  The plaintiff sued the government after he discovered structural defects in the home.  Id.  The plaintiff alleged that the government had negligently inspected and appraised the property and that he justifiably relied on the appraisal in overpaying for the home.  Id. at 700-01.  The Supreme Court held that the misrepresentation exception applied to the plaintiff's claims and

barred his suit against the FHA.  The Supreme Court defined
misrepresentation as one that arises from a breach of "the duty
to use due care in obtaining and communicating information upon
which that party may reasonably be expected to rely in the
conduct of his economic affairs."[5]  Id. at 706.

In Block, a case decided subsequent to Neustadt, the
Supreme Court distinguished the duty to obtain and communicate
accurate information – which falls within the misrepresentation
exception – from other duties.  Block, 460 U.S. 289.  In Block,
the plaintiff received a loan from the Farmers Housing
Administration ("FmHA") for the construction of a prefabricated
home.  Id. at 290-91.  After inspecting the home three times, the
FmHA issued a report that the construction was in accordance with
its drawings and specifications.  Id. at 291-92.  After moving
into the home, the plaintiff discovered serious structural
defects and sued the government alleging that the defects were
due to the failure of the FmHA to inspect and supervise the
construction of the home.  Id. at 292.

The Supreme Court found that the suit was not barred by
the misrepresentation exception because the gravamen of the

---

[5] The Supreme Court distinguished claims that "arise out of
misrepresentation" from those negligence claims that merely
involve an element of misrepresentation.  The Supreme Court noted
that the misrepresentation exception has largely been confined to
the invasion of commercial or financial interests in the course
of business dealings.  Neustadt, 366 U.S. at 711 n. 26.

plaintiff's action was FmHA's negligent supervision and

inspection of the home and not its misstatements.  Id. at 297.

The Supreme Court distinguished Neustadt, observing that the

plaintiff in Neustadt did not allege any injuries he would have

suffered independently of his reliance on the FHA's erroneous

appraisal.  Id. at 296.  The Supreme Court in Block noted:

> [S]ection 2680(h) thus relieves the Government
> of tort liability for pecuniary injuries which
> are wholly attributable to reliance on the
> Government's negligent misstatements.  As a
> result, the statutory exception undoubtedly
> preserves sovereign immunity with respect to a
> broad range of Government actions.  But it does
> not bar negligence actions which focus not on
> the Government's failure to use due care in
> communicating information, but rather on the
> Government's breach of a different duty.

Id. at 297.

Thus, the Supreme Court indicated that the essential

factor for determining whether the misrepresentation exception

applies is the essence or gravamen of the claim.

In a case preceding Neustadt, the Ninth Circuit

distinguished between negligent misrepresentation where the

gravamen of the injury is the communication from other forms of

negligence that tangentially involve communication of

information:

> The key distinction in this area is between the
> performance of operational tasks and the
> communication of information.  The Government
> is liable for injuries resulting from
> negligence in performance of operational tasks

18

> even though misrepresentations are collaterally involved.   It is not liable, however, for injuries resulting from commercial decisions made in reliance on government representations.

Guild v. United States, 685 F.2d 324, 325 (9th Cir. 1982) (holding that plaintiff's reliance on the government's recommendation that a site was fit for building a dam and reservoir fell within the FTCA's misrepresentation exception).

This test was also applied in Green v. United States, 629 F.2d 581, 584-85 (9th Cir. 1980),  where cattle owners brought an action against the government to recover for economic losses allegedly resulting from the application of DDT to grazing lands.  In Green, the plaintiffs asserted that the misstatements and omissions in a notice letter from the government prevented them from making an informed decision as to whether to continue to graze their cattle.  Id. at 585.  The Ninth Circuit held that the "test is not whether the injury was economic but whether it resulted from a commercial decision based on a government misrepresentation." Id.

In Mundy v. United States, 983 F.2d 950, 951 (9th Cir. 1993), the plaintiff alleged that the government negligently processed his request for security clearance, which resulted in termination from his job.  The Ninth Circuit held that the plaintiff's claim focused on the operational task of processing of the security clearance application, rather than the

19

communication of that information to plaintiff's employer.   <u>Id.</u>
at 953.  As such, the plaintiff's claims were not subject to the
misrepresentation exception.   <u>Id.</u>

This Court draws a number of principles from its review
of the applicable case law.  First, the Court must look beyond
the pleadings and consider the essence of the claim.  <u>See</u> <u>Mt.</u>
<u>Homes</u>, 912 F.2d at 355.  Second, if the alleged misrepresentation
is essential to the claim, then the action is barred, even though
there is some allied negligence.  <u>See</u> <u>Rich Prods. Corp.</u>, 804
F.Supp. at 1273.  Third, when a party relies on information
disseminated by the government, plaintiff must allege an injury
independent from the government's representation.  <u>See</u> <u>Mt. Homes</u>,
912 F.2d at 355; <u>Rich Prods. Corp.</u>, 804 F.Supp. at 1273.  Fourth,
if the gravamen of the plaintiff's claim is a commercial decision
based on a government misrepresentation, then the claim falls
within the misrepresentation exception.  <u>See</u> <u>Green</u>, 629 F.2d at
584-85.

### 1.   Application of the Misrepresentation Exception to the Negligent Licensing Claim

This case is most similar to <u>Neustadt</u> and <u>Green</u>, which
held that the misrepresentation exception protects the United
States from liability in those situations where a private
individual relies to his economic detriment on the
representations of government officials.  <u>See</u> <u>Neustadt</u>, 366 U.S.
at 711; <u>Green</u>, 629 F.2d at 584-85.  According to Safari, by

licensing Village, the FAA implicitly represented that Village had economic authority to fly to American Samoa.[6]  Relying on Defendant's representation, Safari entered into the Contract with Village.  This case is distinguishable from <u>Mundy</u> for two reasons.  First, Safari's injuries stem from Defendant's alleged misrepresentation that Village was properly licensed to fly to American Samoa.  <u>See</u> <u>Mt. Homes</u>, 912 F.2d at 355.  In <u>Mundy</u>, the plaintiff was injured because he was terminated from his job, not because his employer relied on the government's negligent misfiling of an FBI report.  Second, Safari made a commercial decision based on the government's representation that it had authority to fly to American Samoa.  <u>See</u> <u>Green</u>, 629 F.2d 581. The plaintiff in <u>Mundy</u> on the other hand, did not make any commercial decisions, but was instead seeking damages for lost employment.

The gravamen of the plaintiff's claim in <u>Mundy</u> was the misfiling of the report, not the misrepresentation by the government.  <u>Mundy</u>, 983 F.2d at 953.  While the gravamen of Safari's negligent licensing claim is that by licensing Village the FAA improperly represented that Village had economic

---

[6] At the hearing on March 25, 2008, Safari argued that in fact there was no misrepresentation in the FAA's license to Village.  Safari cannot have it both ways.  If the FAA improperly licensed Village then there was a misrepresentation that Village had economic authority to fly to American Samoa.  On the other hand, if there was no misrepresentation then the license was appropriate and the FAA was not negligent.

authority to fly to American Samoa.   Thus, Safari's negligent licensing claim is barred by the misrepresentation exception.

**2.    Application of the Misrepresentation Exception to the Negligent Communication Claim**

Safari's claim that the DOT negligently failed to communicate to Village that the DOT restricted its economic authority to Alaska also fails under the misrepresentation exception.   As noted earlier, on May 1, 1995, the Secretary of Transportation restricted Village's economic authority to Alaska only.   <u>See</u> <u>Village Aviation, Inc.</u>, 1995 WL 251928.   Even assuming that the DOT did not properly communicate or that it negligently failed to communicate this information it is barred by the misrepresentation exception.   As the Ninth Circuit has explained: "The misrepresentation exception precludes liability where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation by government consisting either of false statements or <u>a failure to provide information which it had a duty to provide</u>." <u>Green</u>, 629 F.2d at 584 (emphasis added).   Safari argues that the DOT failed to relay information to Village, which resulted in an economic loss to Safari.   Thus, Safari's claim that the DOT negligently communicated information is also barred by the misrepresentation exception.

**B.    Interference with Contract Rights Exception**

The FTCA preserves governmental immunity from any claim arising out of the "interference with contract rights."  See 28 U.S.C. § 2680(h).  In the Ninth Circuit, the tort of interference with contract rights involves the existence of a special economic relationship between a plaintiff and a third party, which is interrupted by the intentional act of the government.  Fort Vancouver Plywood Co. v. United States, 747 F.2d 547 (9th Cir. 1984).  This exception includes both intentional and negligent interference with contract rights.  Saratoga Sav. and Loan Ass'n v. Fed. Home Loan of San Francisco, 724 F.Supp. 683, 688 (N.D. Cal. 1989).  In addition, the exception includes actions for the interference with prospective economic advantages.  See Willfong v. U.S. Dep't of Agriculture, No. C-01-0438, 2002 WL 433602, at *2 (N.D. Cal. Mar. 11, 2002); see also Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151 (D.C. Cir. 1985) (holding that interference by the government with a contractor's prospective advantage was barred under the FTCA as a claim arising out of the interference with contract rights).

Here, Safari alleges that it would not have entered into a contractual relationship with Village but for the FAA's alleged mistake when amending Village's Operation Specifications, which in turn resulted in an economic loss to Safari because of its contractual relationship to Village.  The issue here is whether Safari's claim against the FAA for negligent licensing or

23

negligent approval of King arise out of interference with the Contract.

### 1.   Application of the Interference with Contract Rights Exception to Negligent Licensing Claim

As previously noted in the misrepresentation section, courts must look beyond the characterizations in the pleadings to determine the conduct on which the claim is based.  <u>Mt. Homes, Inc.</u>, 912 F.2d at 356.

Safari argues that its negligent licensing and negligent approval claims do not fall within the interference with contract rights exception because they do not arise out of any contract with Defendant.  <u>See</u> Opposition at 2.  Safari misconstrues this statutory exception, which applies to Defendant's interference with third party contracts as well.  <u>See</u> <u>Williams v. U.S. Dep't of Agric.</u>, 815 F.2d 368, 378 n. 13 (5th Cir. 1987)(noting that alleged interference with contracts "to which the government is not a party" falls under § 2680(h)); <u>McDougal v. U.S. Forest Serv.</u>, Civ. No. 99-1038, 2001 WL 34050112, at *4 (D. Or. Jul. 31, 2001) (holding that to the extent that plaintiff was trying to recover from the government for loss of potential contract with third party, the loss was not compensable under the FTCA because it arose out of interference with a contract right).

Here, the alleged underlying conduct consists of acts or omissions by the FAA that resulted in reducing or eliminating

the profit Safari anticipated receiving as a result of the Contract.  Safari's harm allegedly is a result of the impact of the FAA's licensing and approval procedures on the Contract.  <u>See</u> <u>Numrich v. U.S. Postal Serv.</u>, 54 Fed. Appx. 472 (9th Cir. 2003) (holding that the interference with contract rights exception applied to a government contract that affected plaintiff's contract with a third party).[7]

Safari attempts to analogize its negligent licensing claim to the negligent misfiling claim in <u>Mundy</u>.  However, in <u>Mundy</u>, the court explained that the plaintiff was not making a claim that the government interfered with the plaintiff's contract, but was instead seeking damages for lost employment. <u>Mundy</u>, 983 F.2d at 953.  Here, the opposite is true.  Safari is seeking damages for lost profits which resulted from Defendant's negligent licensing of Village.  As such, this case is distinguishable from <u>Mundy</u> because the FAA's actions purportedly interfered with Safari's prospective economic advantage.

Therefore, the Court finds that Safari's negligent licensing claim is barred by the interference with contract right exception.

**2.   Application of the Interference with Contract Rights Exception to Negligent Approval Claim**

---

[7] Pursuant to U.S.Ct. of App. 9th Cir. Rule 36-3, the Court does not rely on this unpublished opinion as precedent, although the Court does find the opinion illustrative.

The interference with contract rights exception applies to Safari's claim of negligent approval of King as manager as well.  The FAA's approval of King as manager allegedly interfered with the Contract and resulted in reducing or eliminating anticipated profits to Safari.  Thus, it is barred by the interference with contract rights exception as well.

In sum, the Court finds that: (1) Safari has failed to establish that a private individual would be liable for either Safari's negligent licensing or negligent approval claims under Alaska law; and (2) the misrepresentation exception applies to Safari's negligent communication claim, the interference of contract rights exception applies to Safari's negligent approval claim, and both exceptions apply to Safari's negligent licensing claim.

**CONCLUSION**

While the Court sympathizes with Safari, which appears to be a well-meaning innocent party; it unfortunately is evident that the law provides no recourse for Safari other than its limited recovery from Village.  Based on the above analysis the Court GRANTS Defendant's Motion to Dismiss this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 2, 2008.



_____
Alan C. Kay
Sr. United States District Judge

Safari Aviation, Inc. v. United States, Civ. No. 07-00078 ACK-KSC, Order
Granting Defendant's Motion to Dismiss.

27